## WABASH RY. CO. v. JONES.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1922. Rehearing Denied January 16, 1923.)

No. 5762.

**1. Corporations ⟨⇒432(1)—Presumption of ratification of unauthorized contract held rebutted by evidence.**

Where a lease, containing waivers of any claim for damages, was signed on behalf of a corporation by one then having no authority, any presumption of ratification arising from the fact that such person afterward became general manager, and his knowledge thus imputable to the corporation, is rebutted by evidence that none of the officers or directors had been informed of, or had any knowledge of, the lease.

**2. Estoppel ⟨⇒54—User must be with knowledge of the facts, to operate as estoppel.**

To operate as a ratification, or as estoppel, user must have been with knowledge of the facts.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by Ives B. Jones, receiver of the Macon Motor Car Company, against the Wabash Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Ben Franklin, of Macon, Mo., and Homer Hall, of St. Louis, Mo. (N. S. Brown, of St. Louis, Mo., Mahan, Smith & Mahan, of Hannibal, Mo., and Franklin & Van Cleave, of Macon, Mo., on the brief), for plaintiff in error.

E. S. Jones and Nat M. Shelton, both of Macon, Mo. (Eby & Hulse, of Hannibal, Mo., and Lacy & Shelton and Matthews & Jones, all of Macon, Mo., on the brief), for defendant in error.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. This is an action by the receiver of the Macon Motor Car Company against the Wabash Railway Company for fire loss to the Motor Company suffered May 16, 1917. From a judgment, on verdict, in favor of the receiver, the Railway Company sues this writ of error.

The Railway Company presents here two claims of error. The first, and most strongly urged, is that the trial court should have instructed a verdict in its favor on the ground of a contractual release from liability for fire damage. The second claim is based upon refusal of a requested charge concerning this release.

The burned property consisted of a large factory building (with contents) located near the tracks of the railway. The building originally belonged to the Blees Buggy Company. It was sold to the All-

---

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Steel Motor Car Company. The All-Steel Company was dissolved, under statutory proceedings, late in 1916 and its property conveyed to the Macon Company by the statutory trustees. The Macon Company was incorporated, with a nominal capital of $2,000, December 21, 1916, and increased its capital to $600,000 on January 13, 1917. The property and business seems to have been in course of transition between the above dates and little or no business was transacted by the Macon Company during that time.

For the purpose of securing space for a freight platform along the west side of the building, abutting the railway property, the All-Steel Company, while it operated the property, had arranged with the railway to lease a strip of the adjoining right of way, and the railway, for this purpose, had moved a side track from this strip of land to a space just off of it.

The lease now in question was from the Railway Company to the Macon Company. The clause thereof relied upon as a defense is as follows:

"Third: To assume all risks or loss, injury or damage of any kind or nature whatsoever to any building or other structure or appurtenance thereto, belonging to said second party, his heirs, incoming partners, sublessees or others, which may be now or hereafter placed upon said leased premises, or on land adjoining or adjacent thereto, and which are at the time connected with or used in connection with any building or structure upon said leased premises, and all risks of loss, injury or damage of any kind or nature whatsoever, to the contents of any such buildings or structures, or to any goods, merchandise, chattels or any other property now or that may hereafter be upon said leased premises, or land adjacent thereto, as aforesaid, whether belonging to said second party or to others, and whether such loss, injury or damage results from fire or other agency, and whether the same be caused by the negligence of the party of the first part, or any of its employés, agents or servants, or otherwise; and to save and keep harmless the party of the first part from all claims and suits growing out of any such loss, injury or damage."

[1] There is no dispute that if this lease was binding upon the Macon Company the quoted portion is a defense to this action. The controversy is as to whether the lease was so binding. It was executed on January 1, 1917, for the Macon Company, by Albert Skinner as "General Manager." There is no serious dispute that Skinner was not at that time general manager of the company nor an officer of any kind therein. His sole connection with the company was as holder of 5, out of 200, shares of its capital stock. He had been general manager of the All-Steel Company and a trustee for it in the conveyance of its property to the Macon Company. The railway seeks to enforce the lease on the theory of ratification, by the Macon Company, of this action of Skinner.

Skinner became a director and general manager about the middle of January, 1917. He testified that he doubted his authority to sign the lease, January 1, 1917, and communicated such views to the railway agent; that he put the lease in his private safe and never communicated the fact of its existence to any one. The other directors and officers, without exception, testified that they had never heard of the lease until after the fire. The railway asks us to impute knowledge of the lease to these officers and the corporation. Under the circumstances here, the

most that could be conceded this claim is that a presumption of fact that this knowledge existed might be raised from the relation of Skinner, to the company and to these governing officials, subsequent to his appearance as director and general manager. But the presumption is rebuttable and the positive testimony of all witnesses to the contrary would make the existence of this knowledge a question for the jury.

[2] The Railway Company relies, also, upon ratification or upon estoppel through user. To operate as a ratification or as estoppel, user must be with knowledge, actual or implied, of the facts. As said above, knowledge cannot be here implied as a matter of law. Also, the character and extent of the user was disputed in the evidence. This alleged user was along two lines: Building operations in connection with construction of the platform on the strip of leased ground, and loading and unloading of freight over this ground. As to the former, the evidence is clear that certain concrete supports, intended for the platform, were put on this ground. The divergence is as to the time when they were placed there. The evidence is conflicting as to whether this was done while the All-Steel Company was operating the property or, in January and February, after the Macon Company took control.

As to the loading and unloading of freight across this space, the evidence is undisputed that this was done by means of hoists which carried the freight through the air between the cars on the side track and the doors of the building. This was evidence of user, but there was also evidence that other shippers used this space, or portions of it, in handling freight from or to cars on this same track. In short, the user shown was not a necessary user, but one of convenience, and its exclusive character, if that be important, was disputed in the evidence. Considering the dispute in the evidence as to knowledge and as to user, we think the trial court was clearly right in refusing a peremptory instruction for the defendant.

The other claim of error urged here is that the court refused to charge the jury to the effect that the lease was binding if the Macon Company, after Skinner became general manager, used this strip of ground. The court did charge that the lease was binding if the "ground was necessary and useful to the company and was thereafter used" by the Macon Company. We think the charge as asked, ignoring, as it did, the material matter of knowledge was properly refused.

The judgment is affirmed.